UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN B. DANIELS,<br><br>                            Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>SYSTEMS APPLICATIONS AND<br>TECHNOLOGIES, INC.,<br>CARDINAL POINT CAPTAINS,<br>INC., AND DOES 1-5,<br><br>                          Defendants. | Case No.:  3:16-CV-02077-BTM-DHB<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS AND GRANTING<br>PLAINTIFF LEAVE TO AMEND** |

On August 16, 2016, Plaintiff Dustin B. Daniels filed a complaint (then subsequently filed his First Amended Complaint on November 4, 2016 and his Second Amended Complaint ("2AC") on December 16, 2016) against Defendants United States of America ("United States"), Systems Applications and Technologies, INC., ("SA-TECH"), Cardinal Point Captains, INC., ("CPC"), and Does 1-5.  Defendants SA-TECH and CPC moved to dismiss Plaintiff's 2AC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 25.)  For the reasons discussed below, Defendant SA-TECH and CPC's motion is **GRANTED**.

/ /

/ /

# I. BACKGROUND

Plaintiff Daniels ("Plaintiff"), a merchant seaman employed by CPC, was serving as a member of the crew of ATLS-9701 (*Aerial Target Launch Ship*), a drone landing ship and public vessel owned and operated by the United States. (ECF. No. 1, at ¶¶ 2, 4, & 5.)  On or about August 19, 2014, Plaintiff was working onboard ATLS-9701 in support of a training exercise for U.S. Naval Special Warfare Group ONE off the coast of San Diego County.  While "engaged in the replacement of a large steel plate used in assault training and demolition," Plaintiff was injured when the plate fell on his leg. Id., at ¶¶ 6 & 7.  Plaintiff alleges that his injuries were "proximately caused by the failure of Defendants United States of America and SA-TECH, and their agents."  (ECF No. 11 at ¶10.)

On March 23, 2017, Defendants SA-TECH and CPC filed a joint motion to dismiss pursuant to Rule 12(b)(6) arguing that, as Plaintiff's claim falls under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §30901, *et seq.*, and the Public Vessels Act ("PVA"), 46 U.S.C. §31101, *et seq.*, it must be brought *exclusively* against the United States.  (ECF No. 25-1, at 3-4.)  On May 26, 2017, Defendant United States opposed the motion, claiming the SIAA and PVA did not bar Plaintiff's suit against Defendants SA-TECH and CPC because they were not agents of the United States within the meaning of either statute.  (ECF No. 35.)  That same day, Plaintiff also opposed Defendants SA-TECH and CPC's motion on the same grounds.  The Court now considers Defendants SA-TECH and CPC's motion to dismiss.

## II. DISCUSSION

**A.    Standards:**

### 1. FRCP 12(b)(6) – Failure to State a Claim:

Rule 12(b)(6) provides a party may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed.R.Civ.P.12(b)(6).  While Federal Rule of Civil Procedure 8(a) may only require a "short and plain

1  statement of the claim showing that the pleader is entitled to relief," to survive a

2  Rule 12(b)(6) challenge a complaint must state a cognizable legal theory and

3  "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

4  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

5  550 U.S. 544, 555 (2007)).  Indeed, the complaint "must contain sufficient factual

6  matter, accepted as true, to 'state a claim to relief that is plausible on its face'"

7  which would allow the "court to draw the reasonable inference that the defendant

8  is liable for the misconduct alleged." Id.  This claim must assert "more than a

9  sheer possibility that a defendant has acted unlawfully."  Id.

10       In considering a Rule 12(b)(6) motion, the Court must look at the "complaint

11  in its entirety, as well as other sources courts ordinarily examine when ruling on

12  Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

13  complaint by reference, and matters of which a court may take judicial notice."

14  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  While courts

15  generally do not consider material beyond the pleadings in ruling on a 12(b)(6)

16  motion, "[c]ertain written instruments attached to the pleadings may be

17  considered," as well as non-attached documents which are incorporated by

18  reference "if the plaintiff refers extensively to the document or the document

19  forms the basis of the plaintiff's claim."  *Friedman v. AARP, Inc.*, 855 F.3d 1047,

20  1051 (9th Cir. 2017) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

21  2003)).  The Court may also take judicial notice of "matters of public record,"

22  provided the facts noticed are not reasonably disputed.  *Intri-Plex Techs., Inc. v.*

23  *Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

24       ***2. Admiralty Jurisdiction:***

25       Federal courts have original jurisdiction to hear admiralty claims as

26  provided by the Constitution of the United States.  U.S. Const. art. III, § 2, cl. 1.

27  ("The judicial Power shall extend…to all Cases of admiralty and maritime

28  jurisdiction").  Pursuant to 28 U.S.C. §1333(1) "district courts shall have original

3

jurisdiction…of…[a]ny civil case of admiralty or maritime jurisdiction." To invoke admiralty jurisdiction, a tort claim must "have occurred on navigable waters and have a maritime flavor." *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 814 (9th Cir. 2002).

Whether a tort has occurred on "navigable waters" and has the needed "maritime flavor" is determined by "both a location test and a connection test." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009). The location test is concerned with "whether the tort occurred on navigable waters or whether the injury suffered on land was caused by a vessel on navigable water." *Id.* (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537 (1995)). The connection test dictates that "the tort must have (a) 'a potentially disruptive impact on maritime commerce,' and (b) a 'substantial relationship to traditional maritime activity.'" *Cannon v. Austal USA, LLC*, No. 15-CV-2582-CAB (BLM), 2016 WL 4916966, at 3 (S.D. Cal. Apr. 11, 2016). If both tests are met, then the claim has the requisite maritime flavor to invoke admiralty jurisdiction.

### 3. Sovereign Immunity:

The concept of sovereign immunity, which the Supreme Court has characterized as an "axiom of our jurisprudence," is the idea that the United States cannot be sued unless it has specifically consented. *Price v. United States*, 174 U.S. 373, 375-76 (1899). The presence of such consent is a "prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206 (1983) (*see also United States v. Sherwood*, 312 U.S. 584, 586 (1941).) For the United States to consent to suit, a waiver of sovereign immunity must be unequivocally expressed by Congress, and any conditions Congress attaches to a waiver of sovereign immunity "must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Accordingly, one must examine the terms and extent of

3:16-CV-02077-BTM-DHB

the consent itself to "define [the] court's jurisdiction to entertain the suit." *Mitchell*, 463 U.S. at 538.

With respect to admiralty law, before 1916 the "doctrine of sovereign immunity barred any suit by a private owner whose vessel was damaged by a vessel owned or operated by the United States." *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 170 (1976). To remedy the "inequities of denying recovery to private owners," Congress passed several acts subjecting the United States to liability, among them the Suits in Admiralty Act and the Pubic Vessels Act. *Id.*

### 3. Suits in Admiralty Act (SIAA) – 46 U.S.C. §§ 30901-30918:

The United States has waived its sovereign immunity under the SIAA in cases where, had the vessel been "privately owned or operated" or "if a private person or property were involved," a "civil action in admiralty could be maintained." 46 U.S.C. §30903(a). As the Ninth Circuit more plainly stated:

> "[I]f a vessel is owned by the United States, and someone is harmed by the vessel or one if its employees, and the harm is one for which, if the vessel were privately owned, the harmed individual could have sued its owner in admiralty, then the person can bring – indeed, must bring – that admiralty claim against the United States."

*Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015). The SIAA functions similarly to the Federal Tort Claims Act ("FTCA") in that the United States allows itself to be sued as though it were a private actor – indeed, the Ninth Circuit has said the "SIAA is the maritime analog to the FTCA." *Huber v. United States*, 838 F.2d 398, 400 (9th Cir. 1988).

For the SIAA to apply to a civil action, a vessel must be "owned by the United States or operated on its behalf," and there must exist a "remedy cognizable in admiralty for the injury." *Ali*, 780 F. 3d at 1233. Furthermore, the "civil action…must be brought within 2 years after the cause of action arose" to

5

be within the statute of limitation. 46 U.S.C. §30905. The SIAA by itself does not provide a cause of action, as it "merely operates to waive the sovereign immunity of the United States in admiralty suits." *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 996 (9th Cir. 1997). If the SIAA applies, then its exclusivity rule requires that any remedy provided by the Act is "exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim." 46 U.S.C. § 30904. Put plainly, if the SIAA provides for a remedy against the United States, then any suit against an agent, employee, or officer of the United States arising out of the same subject matter is barred. *See Ali*, 780 F.3d at 1233.

### 4. *Public Vessels Act (PVA) – 46 U.S.C. §§ 31101-31113:*

The PVA states that a "civil action in personam in admiralty may be brought…against the United States for...damages caused by a public vessel of the United States." 46 U.S.C. §31102(a). The intention of the PVA is to "impose on the United States the same liability…as is imposed by the admiralty law on the private shipowner." *Canadian Aviator v. United States*, 324 U.S. 215, 228 (1945). In relation to the SIAA, the PVA further extends the United States' consent to be sued "in its capacity as an owner of public vessels." *Dearborn*, 113 F.3d at 996. The PVA "makes all claims subject to the SIAA, including its [two year] statute of limitations and its exclusivity provision, except to the extent to which the two are inconsistent." *Ali*, 780 F.3d at 1234. Generally, a "suit for damages caused by a public vessel falls under the PVA," and all "other admiralty claims against a federally-owned vessel…[fall] under the SIAA." Id. The PVA is subject to the SIAA, including its exclusivity rule and statute of limitations, except to the extent there are any inconsistencies between the two acts. 46 U.S.C. §31103.

/ /

6

**B. Plaintiff's Claims are Subject to the SIAA and PVA:**

Plaintiff's claim sounds in admiralty jurisdiction because it satisfies both the location and connection tests. Plaintiff's injury occurred in navigable waters off the coast of San Diego County, and an "injury suffered by a seaman working on a Navy ship has a substantial relationship to maritime activity." *Cannon*, No. 15-CV-2582-CAB at 1674.

Since Plaintiff's claims "constitute a 'civil action in personam in admiralty'," *Ali*, 780 F.3d at 1236, the SIAA applies because the ATLS-9701 is owned by the United States (and operated on its behalf), and there is a remedy "cognizable in admiralty" for Plaintiff's injury. Id., at 1233. As this is a suit for damages caused by a public vessel, the claim falls under the PVA as well, and is subject to the SIAA's exclusivity rule, as incorporated by the PVA.

**C. The Issue of Agency:**

The issue on which Defendants SA-TECH and CPC's motion turns is whether they were acting as an "agent[s] or employee[s] of the United States" within the meaning of the SIAA. If so, the exclusivity rule of the SIAA (which is incorporated into the PVA) clearly states that Plaintiff's remedy is solely against the United States, and thus Defendants SA-TECH and CPC's joint motion to dismiss must be granted.

***1. Contractual Provisions Regarding Agency:***

Defendant United States argues that the prime contract between it and Defendant SA-TECH ("Prime Contract") refers to the latter as the "Contractor" and the former as the "Customer" or "Government," and that at "no place does it refer to [SA-TECH] as an agent of the United States." (ECF No. 35, at 6.) Further, Defendant United States elucidates that the subcontract between Defendants SA-TECH and CPC ("Subcontract") specifically states that CPC "is an independent contractor and is not an agent or employee" of Defendant SA-TECH, and that neither party has the power or authority to bind the other. Id., at

7.

Defendants SA-TECH and CPC claim that it would be improper to take judicial notice of the terms of the Prime Contract and Subcontract, but a "district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). The Court may take judicial notice of the "existence and legal effect" of contracts between the parties "that provide the foundations for [a plaintiff's] claims." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1114 (C.D. Cal. 2003). These contract provisions are: 1) between the parties; 2) are a necessary part of Plaintiff's claim; and 3) their authenticity is not contested. Therefore, judicial notice of them by this Court is proper.

While these contractual provisions are somewhat contrary to the existence of an agency relationship, they alone are not enough to disprove agency. The Subcontract appears to contain a provision disclaiming agency between Defendants SA-TECH and CPC, but says nothing with respect to any agency relationship between CPC and the United States. The Prime Contract may not refer to Defendant SA-TECH as an agent of the United States, but it does not contain a provision disclaiming agency either. Even assuming the contract language clearly disclaimed agency, under California law a contract provision denying an agency relationship is relevant to the question of whether agency existed, but "is not dispositive." *ING Bank, FSB v. Chang Seob Ahn*, 758 F. Supp. 2d 936, 942 (N.D. Cal. 2010). *See In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, No. 09-2076RSL, 2010 WL 2640243, at 8 (W.D. Wash. June 25, 2010) ("The contractual provision [disclaiming agency] is not dispositive: the fact-finder may weigh the disclaimer against other evidence that suggests the existence of an agency relationship"). *See also Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 501 (2014) (stating that, with respect to the matter of

8

1  agency, "the parties' characterization of their relationship in the…contract is not

2  dispositive").  The contract provisions must be interpreted "not only within the

3  four corners of the instrument, but also by whatever extrinsic evidence is

4  relevant" to show the true meaning of the language of the contract and the

5  relationship between the parties.  *Stilson v. Moulton-Niguel Water Dist.*, 21 Cal.

6  App. 3d 928, 937 (Ct. App. 1971).

7        ### 2.  *Determination of Agency is a Question of Fact:*

8        Ultimately, the determination of whether an agency relationship "has been

9  created is normally a question of fact."  *Id.*, see also *McCollum v. Friendly Hills*

10  *Travel Ctr.*, 172 Cal. App. 3d 83 (Ct. App. 1985) (the "question of whether there

11  exists an agency relationship is one of fact").  Agency is a fiduciary relationship

12  that "results from the manifestation of consent by one person to another that the

13  other shall act on his behalf and subject to his control, and consent by the other

14  so to act."  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 392

15  (1982) (quoting Restatement (Second) of Agency §1 (1958)).  To establish

16  agency, two factors must be present: 1) "the principal must exercise significant

17  control over the agent's activities," and 2) "the agent must be engaged in

18  conducting the business of the principal."  *Cannon*, No. 15-CV-2582-CAB at 5.

19  Even an "independent contractor…may be an agent" if he or she so acted

20  "subject to the principal's overall control and direction."  Id. (quoting *Dearborn*,

21  113 F.3d at 997-998).  Whenever the evidence conflicts regarding the existence

22  of agency, "the question must be submitted to the jury" unless only "one

23  inference can reasonably drawn from the evidence," and then it becomes a

24  question of law for the court.  *Stilson*, 21 Cal. App. at 936.  *See also McCollum*,

25  172 Cal. App. at 91 (whether there exists an agency relationship is "for the jury to

26  decide unless the evidence is susceptible of but a single inference.")  The Court's

27  task is to determine if only one inference regarding agency can be reasonably

28  drawn from the evidence presented; otherwise, the granting a motion to dismiss

3:16-CV-02077-BTM-DHB

1  would be improper.

2      ***3.  Case Law on Point:***

3      In the *Dearborn* case, the Ninth Circuit dealt with a similar issue and

4  circumstances – a seaman working on a United States Navy ship, but chartered

5  to the seaman's employer Bay Ship, was injured when he slipped and fell down a

6  stairwell to the engine room. *Dearborn*, 113 F.3d at 995.  That case turned on

7  whether defendant Bay Ship was acting as an agent of the United States within

8  the meaning of the SIAA.  Id.  If there indeed was a genuine issue of material fact

9  as to whether Bay Ship was an agent, then the district court erred in grating Bay

10  Ship summary judgment.  However, the Ninth Circuit affirmed the lower court's

11  holding, stating the contract between the United States and Bay Ship

12  "contemplate[d] substantial government oversight and supervision."  Id., at 998.

13  Additionally, the ship there was to be "used for government purposes in support

14  of government missions," and even though Bay Ship had "some operational

15  control under the agreement," this was "not inconsistent with the concept of

16  agency."  Id., at 998-999.  Because Bay Ship operated the United States' own

17  ship on the "government's behalf and subject to its overall direction and control,"

18  the court found that Bay Ship was an agent of the United States, and thus any

19  suit against them was barred by the SIAA.  Id., at 999-1000.

20      The Third Circuit held similarly in a case where an independent contractor,

21  Mathiasen's Tanker Industries, Inc., operating a ship owned by the United States,

22  was determined to be an agent for the purposes of the SIAA.  *Petition of U.S.*,

23  367 F. 2d 505, 507 (3d Cir. 1966).  The ship, a tanker, was being operated by

24  Mathiasen "in the business of the Government," subject to a contract with an

25  agency of the United States Navy.  Id., at 508.  The *Petition* court stated that

26  "'agent' of the United States is an appropriate characterization of such a contract

27  operator of a public vessel as Mathiasen," and that an independent contractor

28  "may be an agent in that he is employed as a fiduciary, acting for a principal with

3:16-CV-02077-BTM-DHB

the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf." Id., at 509. Additionally, in their review of the legislative history of Congress' inclusion of the exclusivity rule to the SIAA in 1949, the *Petition* court stated both the House and Senate Committees considered "agents of the United States" to include "any instrumentality through and by which public vessels operated." Id., at 510. Therefore, according to the Congressional view, any independent contractor (an "instrumentality") operating a public vessel qualifies as an agent for purposes of the SIAA.

### *4. Relevant Facts Relating to the Determination of Agency with Respect to SA-TECH:*

The aforementioned Ninth and Third Circuit cases are very similar to the instant matter, where Plaintiff was injured on a United States Navy-owned vessel, while assisting the Navy (the Government) with a training exercise (supporting a Government mission) as part of his employment with CPC. In reviewing the Prime Contract provided by Defendant United States, one can see that SA-TECH was to operate ATLS-9701 subject to the overall direction and control of the Navy. Under section 1.3 of the Prime Contract, which defines the "place of performance," each of the listed locations where the majority of the work is to be accomplished are naval bases (government property). (ECF No. 34-1 at 32.) While, under the contract, SA-TECH is to provide management oversight via the Program Manager to ensure governmental requirements are met, the Program Manager is to be made available to the Government within thirty minutes during normal duty hours. Additionally, "operational information" as well as "specific mission information" that "define operation schedules and operational requirements" are to be supplied by the Government. Id., at 34. In carrying out the Government's requirements, SA-TECH is to follow various Navy instructions and comply with Navy Command Safety programs, and is required to submit a

3:16-CV-02077-BTM-DHB

Safety Training Plan to the Government for its approval. Id., at 35, 36. Further, if SA-TECH were to determine that additional outside vessels or crew are needed to meet the Navy's needs, they first need approval from the Government before they can proceed. Id., at 35. The Prime Contract continues on in similar fashion, while the same theme is oft repeated – SA-TECH is subject to the Government's overall direction and control.

### 5. Relevant Facts Relating to the Determination of Agency with Respect to CPC:

As is typical with contracts between prime contractors and subcontractors, the Subcontract does not appear to establish privity of contract between Defendants CPC and United States. However, this alone does not mean that Defendant CPC was not acting as an agent of the United States. Indeed, SA-TECH has delegated to CPC some of its contractual duties and obligations to the United States, and has in essence allowed CPC to step into its shoes in the limited ways allowed for in the Subcontract. However, as previously noted, an agency relationship is the result from the "manifestation of consent" between the parties that the agent should act on behalf of the principal. Defendant CPC may have been conducting the business of the Government and, through SA-TECH, may have been subject to the Government's control, but there does not appear to be any manifestation of consent between Defendants CPC and United States.

Defendants SA-TECH and CPC, in their reply in support of their joint motion to dismiss ("Reply"), rely on *Dearborn* to argue that a "private entity is an agent of the USA if: (1) USA exercises 'significant control over the charterer's activities – either day to day or overall control and direction of the mission'; and (2) the charterer is "engaged in conducting the business of the United States.'" (ECF No. 38, at 6-7) (Defendants' emphasis removed). However, this oversimplifies the *Dearborn* court's analysis on agency, and does not consider that they used the "common law definition of agency as a starting point."

*Dearborn*, 113 F.3d, at 997.  The *Dearborn* court then goes on to define agency as it is in the Restatement of Agency.  Thus a necessary part of the analysis must be whether there was a manifestation of consent between the parties that resulted in an agency relationship.

### *6.  Plaintiff Bound by Admissions in Second Amended Complaint:*

It is undisputed that in his 2AC, Plaintiff alleges that Defendants SA-TECH and CPC were "agents and/or subagents" of the United States. (ECF No. 11, at ¶4.)  Plaintiff argues that this was an "oversight by counsel" and that any "allegations regarding agency were simply retained from the earlier versions of the complaint." (ECF No. 37, at 3.)  However, in a 12(b)(6) motion to dismiss, the Court must "accept factual allegations in the complaint as true."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Even though *Manzarek* also stated that the pleadings must be construed "in the light most favorable to the nonmoving party," the use of the label "agents and/or subagents" is unambiguous.  Judicial admissions are "formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Patriot Rail Corp. v. Sierra R. Co.*, No. 2:09-CV-00009-MCE, 2011 WL 318400, at 4 (E.D. Cal. Feb. 1, 2011) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).  Such admissions in the pleadings are "generally binding on the parties and the Court."  *Lacelaw*, 861 F.2d, at 226.  Whether this allegation is the result of error or not, Plaintiff and this Court are bound by it, and as Defendants SA-TECH and CPC are (at least for this Court's immediate consideration) agents of the United States under the SIAA, their joint motion must be granted.

### E. Leave to Amend Plaintiff's Second Amended Complaint:

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez*

*v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).  The court has "broad discretion in deciding whether to grant leave to amend and whether to dismiss actions with or without prejudice."  *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011).  Leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P 15(a).  Factual assertions are only considered conclusively binding if they are not amended.  *Lacelaw*, 861 F.2d, at 226.  As this is the first of Plaintiff's pleadings to be challenged, he should be granted leave to amend it.

## III. CONCLUSION

For the reasons discussed above, Defendants Systems Applications and CPC's joint motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED** without prejudice.  The Court **GRANTS** Plaintiff leave to amend his complaint that complies with Local rule 15.1(c), remedying the defects identified above.  Plaintiff must file his Third Amended Complaint within 20 days of the entry of this Order.  If a Third Amended Complaint is filed, the Court believes the agency issue is more appropriately resolved on a motion for summary judgment after limited discovery.  Therefore, unless leave from the Court is obtained, no further motion to dismiss based on agency will be entertained.

**IT IS SO ORDERED.**

Dated:  August 11, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court

3:16-CV-02077-BTM-DHB